# In the United States Court of Federal Claims

No. 20-1497C
(Originally Filed: January 22, 2021)
(Re-issued: February 2, 2021)[1]

* * * * * * * * * * * * * * * * * * * * *

SUPERIOR OPTICAL LABS, INC.,

    *Plaintiff,*

v.

THE UNITED STATES,

    *Defendant*,

and

PDS CONSULTANTS, INC.,

    *Intervenor.*

Post-award bid protest; Corrective action; GAO; Lack of ambiguity; Injunctive factors.

* * * * * * * * * * * * * * * * * * * * *

*Robert J. Sneckenberg*, Washington, DC, for plaintiff. *Elizabeth H. Connally*, *John E. McCarthy Jr.*, and *Rina M. Gashaw*, of counsel.

*Nathanael B. Yale*, Trial Attorney, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, with whom were *Jennifer B. Dickey*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Deborah A. Bynum*, Assistant Director, for defendant. *Natica C. Neely*, VA Office of General Counsel, of counsel.

*David S. Gallacher*, Washington, DC, for intervenor. *Emily S. Theriault*, *Adam A. Bartolanzo*, and *Daniel J. Alvarado*, of counsel.

---

[1] This opinion was originally issued under seal to afford the parties an opportunity to propose redactions. They have done so. Redactions appear in brackets below.

ORDER AND OPINION

BRUGGINK, *Judge*.

This action is a challenge to the Department of Veterans Affairs' decision to recompete a contract to provide eyeglasses to the VA. Plaintiff was originally awarded the contract. Intervenor protested that award at the Government Accountability Office. The agency took voluntary corrective action in response to the protest, resulting in the cancellation of the award to plaintiff and an announcement that the VA would allow proposal revisions and make a new award decision. Plaintiff challenges the corrective action decisions as arbitrary and capricious. The matter is fully briefed on cross-motions for judgment on the administrative record. As more fully explained below, because the agency lacked a rational basis for its corrective action, we sustain the protest and enjoin the cancellation of the award.

BACKGROUND

On, May 11, 2020, the Department of Veterans Affairs ("VA") issued request for proposals 36C26220R0093 ("RFP" or "solicitation") for a contract to supply eyeglasses that the VA will provide to eligible beneficiaries of its healthcare system in California, Nevada, and New Mexico. The RFP called for a single award of a fixed-price, indefinite-delivery, indefinite-quantity contract to the lowest-priced, technically acceptable offeror. The contract was for one base year with four option years.

The agency required offerors to provide a pricing worksheet with prices for each year of the contract and "two (2) sample sets (labeled as Set 1 and Set 2) of the eyeglass frames offeror[s] propose[] to provide under the contract." Administrative Record ("AR") 119. Offers were then ranked by total evaluated price for all five potential years, and then the lowest price offer was evaluated for technical acceptability first. The first technically acceptable proposal would be awarded the contract. *Id.* at 120.

The VA received six separate bids from four offerors.[2] The intervenor here, PDS Consultants, Inc. ("PDS"), submitted three different offers. The other offerors each submitted one proposal. The lowest priced offer, from [     ], was evaluated first but found not to be technically acceptable

---

[2] The VA also received one late proposal and one proposal from an offeror that was not properly registered with the VA as a service-disabled veteran owned small business. Neither of these offers were considered.

2

because it did not submit all the required frame samples. The second-lowest bid was from PDS, its first of three offers, but it too was found not to be technically acceptable due to missing frames in both sample sets. Plaintiff, Superior Optical Labs, Inc. ("Superior"), offered the next lowest price. The VA found Superior's offer to be technically acceptable, and thus, on August 25, 2020, it awarded the contract to plaintiff. The other offerors were notified of the award to Superior by debriefing letter dated August 24, 2020. In the letter, plaintiff's price was disclosed pursuant to FAR part 15.506.

On September 2, 2020, PDS filed a protest with the Government Accountability Office ("GAO"), arguing, among other things, that the solicitation was unclear with respect to whether offerors were required to submit all of the required frames in each of the two sample sets, i.e., two complete sets of the eyeglass frames being offered. PDS argued that the VA's rating of its first offer ("PDS #1") as technically unacceptable was arbitrary because the solicitation did not require that both sample sets of frames each be complete. Alternatively, PDS argued that the RFP was ambiguous with respect to what the agency expected and that the ambiguity was latent. As required by the Competition in Contracting Act ("CICA"), 31 U.S.C. § 3553(d)(3)(A)(iii) (2018) (known as the "CICA stay"), the agency issued a stop work notice to Superior pending the GAO protest.

On September 24, 2020, prior to the agency's response to PDS' protest, the VA informed GAO that it would take corrective action, cancelling the award to Superior, amending the solicitation, and making a new award decision after allowing proposal revisions. AR 925. The agency detailed that it did indeed intend that each offeror would submit two complete sets of all frames being offered due to the imposition of social distancing requirements in response to the COVID outbreak in the United States. In other words, members of the Technical Evaluation Board ("TEB") would not meet together in the same physical location. Thus, having multiple sets of frames would make the evaluators' process smoother and quicker. *Id.* at 926-27. It further explained that this was akin to requiring bidders to submit multiple copies of the same written proposal. *Id.* at 926. The notice nevertheless went on to conclude that the VA "agrees that the section of the solicitation about which Protester complains is subject to more than one reasonable interpretation and that the language at issue is susceptible to both VA's interpretation of the language as well as the understanding that Protester contends it reached." *Id.* The notice went on to state that the "the solicitation [did] not explicitly state[] that offerors were required to submit two identical frame kits" nor did it "explicitly state that each sample set of eyeglass frames must independently satisfy each of the technical acceptability criteria described in solicitation." *Id.* at 927. The VA

3

reconsidered the language as a whole and found that it could reasonably be read to require only that each offer contain, across two sets, all of the frames necessary to meet the technical requirements. *Id.* at 927-28. The agency relied on the fact that the solicitation used the plural word "sets" in one place, but then later in the RFP referred to the singular words "sample" and "frame mix." It found this created a latent ambiguity requiring correction for a fair competition.

Superior filed an objection on September 25, 2020, claiming that it would be unduly prejudiced by this late correction of the supposed ambiguity due to its price having already been disclosed to the other offerors. Despite the objection, GAO dismissed the protest as academic.

On October 20, 2020, at plaintiff's behest, VA disclosed all offerors' prices in an attempt to ameliorate the prejudice to Superior from having its price disclosed. Not satisfied, Superior filed the instant action on October 29, 2020. The agency agreed not to proceed with its reevaluation and award in order to give the court time to consider the merits of the protest. The matter is now fully briefed. Oral argument was held telephonically on January 15, 2021.

## DISCUSSION

We have jurisdiction to review actions taken by federal agencies in connection with a procurement or proposed procurement. 28 U.S.C. § 1491(b) (2018). We review those actions pursuant to the standards set forth in the Administrative Procedures Act, 5 U.S.C. § 706 (2018). 28 U.S.C. § 14941(b)(4) (stating that review under this section would be pursuant to the standards set forth in the APA). In order to be successful, the protestor must thus show that the challenged agency action was arbitrary, capricious, or otherwise not in accordance with the law. *Centech Group, Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009). This is rational basis review. *Impressa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001).

The inquiry is unchanged in the corrective action context. *See Dell Fed. Sys., L.P. v. United States*, 906 F3d. 982, 992 (Fed. Cir. 2018). This means that a corrective action will not be set aside if there is a rational basis for it, supported by a "coherent and reasonable explanation." *Id.* The agency need not admit an error before taking corrective action, *ManTech Telecomms. & Info. Sys. Corp. v. United States*, 49 Fed. Cl. 57, 65 (2001), and the corrective action need only be "reasonable under the circumstances." *Sierra Nevada Corp. v. United States*, 107 Fed. Cl. 735, 750 (2012).

Plaintiff seeks an injunction to prevent the agency from carrying out its corrective action and to reinstate the award to Superior. We consider four factors in deciding whether the extraordinary relief of an injunction is warranted under the circumstances: 1) whether plaintiff has succeeded on the merits in showing that the agency acted irrationally or otherwise illegally, 2) whether plaintiff will suffer irreparable harm absent the injunction, 3) the balance of the hardships to the respective parties if an injunction is entered, and 4) whether an injunction is in the public's interest. *PGBA, LLC . v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004). We begin with the first factor.

I. The Corrective Action Was Not Merited

We agree with the plaintiff that the corrective action here is irrational because there was no ambiguity in the solicitation nor does the record support the agency's conclusion that PDS, or any other offeror, was misled. We start by turning to the language of the RFP in question.

    A.  The Solicitation Was Not Ambiguous

The RFP at Section E.2.3, "Required Submittal for Proposal Evaluations," instructed offerors to submit "two (2) sample sets (labeled as Set 1 and Set 2) of the eyeglass frames offeror proposed to provide under the contract." It further required that each "Offeror's submittal shall separate men's frames, women's frames, and unisex frames into separate containers with each container clearly marked to identify" what was contained therein. *Id.* Bidders were warned that, if they "fail[ed] to submit these samples with their proposals in the manner specified in this paragraph," their proposals might be rejected. *Id.*

The next section, E.3, contained the technical evaluation factor, "Proposed Frame Mix." It stated, "To be found technically acceptable for this evaluation factor, the sample of frames the offeror submitted with its proposal must meet ALL of the following criteria." *Id.*

Frame sample must contain:

- Minimum of 25 men's frames
- Minimum of 25 women's frames
- Minimum of 15 unisex frames
- Minimum of 5 large frame sizes for men's frames (size 54 to 60)

5

- Minimum of 3 frames with short bow lengths for men's frames (size 125 to 130)
- Minimum of 5 large frame sizes for women's frames (size 54 to 60)
- Minimum of 3 frames with short bow lengths for women's frames (size 125 to 130)

*Id.* The RFP continued with instructions for specific numbers of metal frames and plastic frames. It used the following language to introduce those requirements: "Metal frame mix must include:" and "Plastic frame mix must include:". *Id*. at 119-20. A list of the number of each type of frame required followed.

From these statements, PDS and the agency contrast, as they did to GAO, the use of the plural in Section E.2.3 ("sets") with the use of the singular in Section E.3 ("mix" and "sample"). PDS points out that the word "identical" does not appear in the first section to refer to the sets, but instead the word "submittal" was used thereafter in reference to the sample sets. The use of the singular ("frame sample" and "frame mix") in the following section buttresses the confusion, according to defendant and intervenor. Thus, in their view, the VA could have been asking for two identical, complete sets or it could have been asking for one complete sample broken into two sets.

They argue that this ambiguity was latent because it did not become apparent until after evaluation. Defendant argues in the alternative that, even if patent, the agency was well within its wide discretion to correct that error after the fact. It is of no note, defendant and intervenor argue, that PDS' protest of a patent ambiguity would have come too late under the Federal Circuit's rule in *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. Cir. 2007), because agencies are not so constrained when they take voluntary corrective action. We need not reach that question, however, because we find no ambiguity in the RFP.

The required "submittal" referenced in E.2.3 was to consist of two sample sets, independently labeled as such, containing "the eyeglass frames offeror proposes to provide under the contract." AR 119. Thus, an offeror's submittal was required to contain two sets of the frames it was offering to the VA. The combination of a single submittal and plural sets is thus not only not confusing, it is necessitated by what the agency wanted. There is no reasonable interpretation of this language other than that the VA required two complete sets of frames within a single submittal.

6

Contrary to the VA's explanation to GAO, the terms "submittal," "sample" and "mix" do not interject any ambiguity. First, because those terms do not modify the phrase "two (2) sample sets." Second, the word submittal clearly refers to the entire proposal to be submitted. It is in the singular because there is only one proposal, although it includes two sample sets. Third, the use of the singular word "sample" or the phrase "sample set" is fully consistent with the agency's expectation that the "sample," or "sample set" be complete, although duplicated within the proposal. Indeed, the singular terms confirm that the agency expected the individual sample sets to be complete.

There is no rational reason, nor has any been proffered, why offerors would have thought that the agency was asking for incomplete sample sets, even if the two, when combined, might have contained all the required frames. Such a requirement is contrary to the plain reading of the RFP and would only introduce confusion into the process. Moreover, as explained below, PDS' proposal belies any notion that it actually thought it was submitting a complete proposal by providing two incomplete sample sets.

### B. Offerors Were Not Misled

An examination of the record reveals that the "interpretation" offered after the fact by PDS to GAO and now to the court was not the basis of its bid. Indeed, none of the unsuccessful offeror's evaluated proposals support the notion that they were led to believe that they could spread out a single frame mix across two independently incomplete sets. PDS' first proposal (PDS #1) contained two sets that were largely identical, but neither was complete. One set was missing [                                    ]. AR 584 (Source Selection Decision Memorandum). The solicitation required three, but PDS provided [                    ]. The other set was missing [                                                                      ]. *Id.* The TEB also found [                              ].³ *Id.* The fact that intervenor provided two samples of virtually a complete set of its offered frames is inconsistent with the idea that it believed that the solicitation allowed the sample mix to be spread across the two sets. What possible reason could there be for creating a second set with only one pair or a small handful of glasses? PDS' second offer (PDS #2) further belies the notion.

---

³ Intervenor has not explained why it provided two [                    ]. This provides further support for the conclusion that PDS simply made errors in its submission.

The first set evaluated for PDS #2 contained all of the required frames.[4]  *Id.* at 585.  PDS did not split its frames across the two sets for its second offer.

Rather than indicate that PDS was misled by an ambiguous requirement, the errors and omissions in PDS #1 indicate a lack of care, not an attempt to spread out a single set of frames across two sets.  PDS' only explanation, citing its three distinct offers of differing frames, was that it was trying to show the agency its many offerings by using non-identical sample sets, something it argues it was induced to do by the agency's lack of clarity.  Offering the same frames but spread over two sets does not display more wares. however.  Further, the record does not support that this was intervenor's intention.  Its first offer contained duplicates of most of its frames, and its second offer contained a complete set.  It makes no sense to have done either of these things had PDS intended to split its frame mix across two sets and/ or attempted to present a wider sample of offerings.  Instead, intervenor's odd presentation suggests only that an error was made unintentionally in the first offer; it does not demonstrate confusion about the terms of the solicitation.

We also note that, with respect to the proposal of the lowest priced offeror, [         ], which was evaluated first and found technically unacceptable, its two sample sets each failed the requirement of containing three men's and three women's short bow frames.  AR 583-84.  Even combined, [       ]'s two sets would not have met the VA's required frame mix.  [     ] would have been short at least two women's short bow frames.  This suggests, like PDS #1, that it simply erred and was thus properly not awarded the contract despite its low price.

The unsuccessful offers do not confirm an ambiguity in the solicitation.  Rather, the bidding errors appear random, not the product of a considered reading of the solicitation.  Defendant and intervenor have provided no explanation that supports an alternative reading of particular terms in any sort of coherent way that explains the way intervenor put together its submissions.  This means that we cannot agree that there were any facts supporting an assumption of bidder confusion sufficient to warrant setting aside the award.  It appears that the VA simply took PDS' protest allegations at face value without any consideration of whether they were supported by the record.  This constitutes irrational conduct.

---

[4] It was not selected for award, however, because plaintiff's offer was lower in price than PDS #2.  It is not clear why the agency examined this offer at all, as it was higher in price than Superior's.

### C. There Is No Other Independent Rationale

Defendant also suggests that its corrective action was reasonable because it was taken to "foster competition" as required by CICA of all federal procurements. Per defendant, because PDS' submission "would have been acceptable under PDS's reasonable interpretation," corrective action was independently justified as taken in pursuit of maximum competition. Def.'s Mot. for J. on the AR 12. This is apparently enough, in defendant's view, to undergird the VA's decision. We disagree.

It was not until after award and disclosure of the winning bidder's price to its competitors that the agency now discovered this rationale for altering its reading of the RFP. Although competition in federal procurements is crucial, agencies are not at liberty to reject a compliant proposal in a fair competition simply to generate a lower price, absent some independent rationale for doing so. Here, the agency requirements remain unchanged and no additional offers will be solicited.

We find no reasonable basis for the correction adopted by the agency because there was no error that needed correcting. The RFP was not ambiguous and Sections E.2 and E.3 are not in conflict. Offerors were plainly instructed to offer submittals containing two sample sets. It simply makes no sense for those samples to have been different.

Errors were made, but not by Superior. It was thus lawfully awarded the contract. At that point, the parties' legal rights viz-a-viz one another changed. Although the government had the right to terminate the award for convenience or if its needs changed, here that was not the case. The asserted justification for correction was in error. The agency had made an award to a qualified bidder; that fact should have been taken into consideration before exposing the awardee to the unfairness of reopening competition after revealing its bid amount. *See Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1382-83 (Fed. Cir. 2012) (affirming the finding that a new competition after the contract had been awarded and price disclosed was, absent some independent justification, arbitrary and prejudicial). Here, we find no justification for the agency to have done so. Plaintiff having established success on the merits, we turn to the other factors relevant to whether the status quo ante should be restored via an injunction.

II. Plaintiff Will Be Irreparably Harmed

We find that plaintiff will be irreparably harmed if the corrective action is allowed because it was the lawful awardee of the contract. Absent an injunction, it will be forced to compete both against the offerors that it already bested and, in essence, itself. Because its price was disclosed to the losing bidders, in a recompete, plaintiff must lower its price or risk the other offerors lowering theirs to beat plaintiff's disclosed price. Here, in fact, plaintiff would likely be forced to lower its price below each of the other offeror's prices because all offeror's prices have been revealed, and it was not the lowest priced offer.

The government argues that the disclosure of all of the offerors' initial prices, at plaintiff's request, obviates this concern. We disagree. This is a lowest-price, technically acceptable procurement. If the agency action has the effect of making more offers technically acceptable, the rational bidder knows that it must now beat those offerors' disclosed prices. The agency's decision thus has the effect of artificially lowering proposed prices to the detriment of a successful awardee.

Defendant is correct that its disclosure of plaintiff's price to the unsuccessful awardees was lawfully done pursuant to FAR part 15.506(d)(2), which instructs the agency to disclose the evaluated price of the successful offer, but that does not end the inquiry. No risk of the harm faced now was assumed by plaintiff when it bid. It is the imposition of an unlawful corrective action that turns what would have been a benign disclosure— absent the corrective action, plaintiff would be performing at the price it offered—to one that is highly detrimental to the plaintiff because of the redo. In this context, that is irreparable harm. *See Sheridan Corp. v. United States*, 95 Fed. Cl. 141, 155 (2010); *see also Sys. Application*, 691 F.3d at 1383 ("The risk of recompeting for a contract after revelation of one's price calculations to competitors, however, does not extend to a contract fairly competed and won on the first solicitation.").

III. The Balance of the Hardships Favors Plaintiff

The irreparable harm to plaintiff established, we consider the balance of harms. Defendant has not suggested any independent harm that the VA will suffer should the corrective action be set aside. Although it mentions in passing that it may acquire the contract at a lower price after a new award decision, to its credit, defendant does not argue that it will be harmed monetarily if its corrective action is set aside. PDS would not be harmed because its lowest priced offer was rightfully found to be technically

unacceptable.  It has no rightful expectation that it be allowed a chance to correct its error.  Absent an injunction, only plaintiff is harmed.  The balance of the hardships favor plaintiff.

IV.  The Public's Interest

As always, the public has an interest in the fair and lawful procurement of goods and services by the government.  Absent a reasonable rationale for corrective action, an offeror may not be forced to compete against itself and other offerors again when it has already won the contract.  The public interest favors an injunction.

## CONCLUSION

The VA erred when it accepted intervenor's implausible protest at GAO.  The RFP is not amenable to reasonable interpretations other than the one the agency admittedly intended: "two (2) sample sets . . . of the eyeglass frames offeror proposes to provide."  AR 119.  The solicitation provided no reason to think that the individual sets could be incomplete.  There was no ambiguity, latent or patent, nor do the offerors' proposals suggest otherwise.  Plaintiff, on the other hand, was harmed by the VA's corrective action, and absent an injunction, its injury will be irreparable.  The balance of harms likewise favors relief.  The public interest weighs in favor of not allowing an unduly prejudicial do-over for no valid reason.  Plaintiff's motion for judgment on the administrative record is thus granted.  Defendant's and intervenor's cross-motions are denied.  Accordingly, the following is ordered:

1. The Department of Veterans Affairs is hereby enjoined from the corrective action that it announced to GAO in its September 24, 2020 notice of corrective action.

2. The agency must reinstate the award to plaintiff and is prohibited from recompeting the contract absent a lawful reason to do so.

3. The Clerk of Court is directed to enter judgment for plaintiff.

4. Costs to plaintiff.

s/ Eric G. Bruggink
ERIC G. BRUGGINK
Senior Judge
